NEWPORT HOSPITAL *et al. vs.* CHARLES S. RITCHIE *et als.*

JUNE 29, 1932.

PRESENT: Stearns, C. J., Rathbun, Sweeney, Murdock, and Hahn, JJ.

HAHN, J. This is a bill of complaint brought by the Newport Hospital and Otto L. Voigt to permanently enjoin the original respondents—members of the town council, chief of police and constables of the town of Middletown—from interfering with the conduct of complainant Voigt in obstructing entrances to certain land at Sachuest Beach in Middletown, of which Voigt is lessee from the Newport Hospital, and in preventing the use of the same by the public generally for parking automobiles thereon, for bathing and other uses, unless payment is made for such privileges. On their own motions the town of Middletown and the Attorney General, who represents the State and the public, were made parties respondent.

The respondents filed joint and several answers containing averments by way of cross-bills, to which the complainants filed general replications, and answers to the cross-bills. The respondents then joined issue on these answers.

The principal issue involves the hospital's title upon which depend the rights of the respondent Voigt under his lease. After hearing, a decree was entered sustaining the right of Voigt to prevent the unobstructed use by the public of the land in question. Relief upon other matters prayed for in the bills and cross-bills subsidiary to but involved in the main issue was granted or denied by said decree, and the case is before us on appeals from the same by the parties on each side.

The acts complained of occurred on two tracts of land and the foreshore in front of them, leased by Newport Hospital to Voigt and claimed by the respondents to be "commonage," bounded as follows: on the east and west by land of St. George's School, on the north by Hanging Rocks Road and land of Newport waterworks and on the south by the line of mean high tide.

The complainants base their claim of title to the land and right to the relief prayed for upon a deed dated May 19, 1746, from the clerk of the town of Middletown to one

Jonathan Easton, purporting to convey land described as follows:

> "A certain Beach, called and known by the name of Sechewest Beach, Scituate, lying and being in Middletown aforesaid, containing by Estimation Eighty Acres, be the same more or less, and is bounded as followeth, Viz: Southerly on the sea or Ocean; Westerly on land of the said Jonathan Easton; northerly partly on Land of James Honyman, Jr., and partly on Land of the said Jonathan Easton; and Easterly on Land of the said Jonathan Easton."

As a part of the transaction Easton gave the town treasurer a bond in the penal sum of £2,000 to secure the privileges required by the following vote of the town meeting: "Voted that Sechewest Beach be sold to Jonathan Easton for two hundred pounds, in case he will allow all such privileges as shall be thought necessary for the service of the town by a committee hereafter chosen . . . ." This bond, after referring to a convenient driftway to pass and repass from the end of the land near the place called "the falls" down to the "commonage", also a convenient driftway to pass and repass into Sachuest Neck, described these privileges in part as follows: ". . . Likewise that any of the Inhabitants aforesaid shall have full and free Liberty of going to and from the said Beach or Commonage, or any part thereof, without mollestation, either on Horse back or on foot, likewise with carts and Teems of Oxen or Horses, to fetch and carry away from the said Beach or Commonage, sand, Seeweed and Shells, and all such Drift Stuff as any of the Inhabitants aforesaid shall take up in the Surff, or under High Water Mark, against said Commonage or Beach. And that They shall have the Liberty to lay Seeweed and Shells in heaps on any part of the said Commonage, and to carry off the same, as it suits their conveniancy . . ."

The respondents, in the parts of their answers that are in the nature of cross-bills, claim that before the above-mentioned deed to Jonathan Easton the commonage had been dedicated as a town common to the use of the inhabitants and the general public for passing and stopping thereon at will and for numerous forms of recreation, that the dedication was accepted through user by them and that such user has continued ever since without substantial interruption or obstruction until 1929, when a restraining order was issued in this cause.

The respondents also claim that the deed to Jonathan Easton conveyed to him title to the commonage subject to the above-described rights of the inhabitants and the general public to use it forever as a town common and public pleasure ground; that the title of Easton and his successors to the commonage has always continued subject to these rights down to the present time.

The respondents further contend that said town, in making said conveyance, exceeded its power and disregarded its duty to retain the commonage for the benefit of its inhabitants and the general public.

The fundamental question which must first be answered is whether Jonathan Easton's grantor, the town of Middletown, had a title legally sufficient to warrant the conveyance of the rights contained in the deed to Easton, upon which rests the title of the Newport Hospital and that of its lessee.

An investigation of the title to the land in question, as shown by the evidence, reveals that at a meeting of the town of Newport on April 28, 1714, a vote was passed dedicating to public use all lands in the town not yet allotted. The only copy of this original vote is the following mutilated form in the town records:

"At a quarterly meeting of the freemen of the
Town of Newport, April 28, 1714
Voted in this quarter meeting and it is enacted
. . . . . . . . . . . . . by the authority thereof that all

> vacant pieces of.............not yet laid out in
> this Town shall be............they are at pres-
> ent, to all pertuity for the..............of the
> Town."

However, a written protest against letting Sachuest Beach, presented to the Newport town meeting, June 1, 1725, appears to supply the complete text of the earlier vote, which is referred to therein as "an act of this town bearing date April 28, 1714, wherein it is enacted that all vacant lands within this town shall be and remain to all perpetuite for the use and benefit of the town." Sachuest Beach and the adjacent property in question were at this time a part of Newport and were consequently among the lands dedicated to public use by the above vote. In 1743 a certain portion of Newport, including the land in question, was set off to form the town of Middletown. Three years afterwards the deed to Easton was delivered and recorded. It is undisputed that until that conveyance said land, known as the "commonage", had not been allotted or conveyed to any individual.

The vote of 1714 was considered by this court in the case of *Cascambas* v. *City of Newport,* 45 R. I. 343, in which at pp. 347, 348, the court says: "We are of the opinion that in 1714 the freemen represented the original proprietors of Newport, that a meeting of the freemen could declare and put into effect the agreement of the proprietors made in 1641, and that thereafter all lands not laid out and allotted became common lands dedicated to public use. . . . We conclude that the city of Newport as successor to the town of Newport holds title to the beach in trust for the benefit of the inhabitants and the public, to be used by them in the manner and for the purposes for which in the circumstances, and in accordance with the times, the beach is adapted."

After the dedication by said vote of 1714 and the user of said land, the public rights thereby created could not be destroyed or diminished by anything done by either town without the authority of the general assembly; *Clark* v.

*City of Providence,* 16 R. I. 337. So long as the right of commonage remained within the town of Newport, no attempt was made by that town to do anything in derogation of those rights; it leased public property to individuals but, as stated in the *Cascambas* case *supra,* this did not necessarily affect the rights of the public therein. The ancient votes and records succeeding the vote of 1714, referring to Sachuest Beach, show that until the deed to Easton those who, as at present, sought to render the public rights subservient to private convenience or gain were unsuccessful. For that matter conduct afterward even by the inhabitants and the public would be immaterial, as it is well established that the sole power to change a common is in the legislature. The complainants in the present case were not parties to the *Cascambas* case and consequently are not bound by the decision therein as *res adjudicata;* but it is a decision of this court on the legal effect of the same vote which is now before us, and the construction placed upon it should not be disregarded unless convincing reasons are advanced therefor.

The complainants in the court below relied upon the decision in the case of *Middletown* v. *Newport Hospital,* 16 R. I. 319, as a conclusive adjudication of the right of the town of Middletown to execute the conveyance to Easton. If this reasoning be adopted, the rights of the general public in the land thereby conveyed are extinguished. This view was sustained in the instant case by the court below which, in its first rescript, in discussing the opinion in said case, said: "The court nevertheless held the transaction valid since the bond, conditioned as it was, carried out the intent of the town to reserve or preserve the rights of the inhabitants to use the beach."

An examination of said case discloses the fact that the court did not consider the vote of 1714 or its effect on the right of the public to the commonage. The earliest document considered therein was a vote of the town of Middletown in 1744, two years before the deed to Easton. The

people were not represented in said case nor was the Attorney General made a party to protect public rights which are practically the only matters involved in the present case. For these reasons the questions now presented were not adjudicated in that case.

In 1 Freeman on Judgments, 5th Ed. § 508, it is said: "A judgment against a city or county or other political subdivision of the state is conclusive upon the state or another local subdivision to the extent, and only to the extent, that the former, with respect to the matter litigated, was in privity with and a representative of the rights of the latter."

We therefore find that the question involved is not by reason of the decree entered in *Middletown* v. *Newport Hospital, supra, res judicata* as to the public.

Evidence was presented of votes of the towns of Newport and Middletown, and of acts done by these towns or certain inhabitants thereof, which probably represented efforts to deprive the public of the rights previously given them. Yet as no town or individual was empowered to deprive the public of its rights there appears in the great mass of the testimony introduced no instance in which the State ever relinquished the rights of the people in the commonage.

Our conclusion as to the principal question—whether the grantor of the commonage to Easton had legal authority to make such conveyance—is that the finding in the *Cascambas* case applies to the instant case and that neither Newport Hospital nor Otto Voigt, the lessee, have the right in any manner to interfere with the public in the use of land which as commonage has been dedicated to them.

As the public has rights of commonage in the use of the land in question, the questions of right of way to the land and beach need not be considered. The complainants have shown no right to exclude the public from the land which, since 1714, they have used and may continue to use until deprived thereof by act of the legislature.

In the course of the trial the Attorney General moved to amend his answer in order that the question of the rights

492

of the people might be fully determined in this case. As no further evidence is necessary to establish these rights and since the record is such that they may be decided herein, it is unnecessary to consider the Attorney General's appeal because of the denial of his motion to file an amended answer as in his original answer he has submitted to the court for determination the rights of the public in the land in question.

Those portions of the decree which give the complainants rights inconsistent with the rights of the public in the land in question are reversed and the appeals from such portions are sustained. This conclusion renders unnecessary further consideration of the remainder of the decree or the appeals therefrom.

On July 5, 1932, the parties may present to this court for approval a form of decree to be entered in the Superior Court in accordance with this opinion.

*William R. Harvey, J. Russell Haire, Sheffield & Harvey,* for complainants.

*Benjamin M. McLyman, Attorney General, John C. Burke, Gardner, Moss & Haslam, Sigmund W. Fischer, Jr., Asst. Atty. Gen., William W. Moss, Harry A. Tuell,* for respondents.